[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this action married on October 28, 1989 in Danbury, Connecticut. There is one minor child issue of this marriage, Christopher Scott Bennett, born January 4, 1991. The plaintiff resided continuously in this state for at least twelve (12) months preceding the filing of the complaint. No federal, state or municipal agency is contributing to the support of either party or the minor child. This action was commenced by the plaintiff by complaint dated February 19, 1993, returnable to the court March 23, 1993. In October, 1994, the plaintiff moved to amend his complaint seeking joint custody of the minor child. The parties attempted to resolve the custodial issue through mediation with the Family Relations office. As they were unsuccessful in those attempts, this matter came before the court as a fully contested proceeding with the plaintiff seeking joint custody and the defendant seeking sole custody.
This is a second marriage for the thirty-two (32) year old plaintiff husband and the first marriage for the thirty-four (34) year old wife. The husband has completed two years of college. The wife has her G.E.D. Both parties contributed all of their earnings from their full-time employment to the economic benefit of the family. After the birth of their son Christopher, the wife did not work for approximately eight months, but she continued to assist her husband in his business, waiting on customers, running errands, doing banking, attending trade shows and running the cash register. She then returned to work part-time and still continued to help in her husband's business. The wife's mother, who testified at trial, also worked in the husband's business, CT Page 6198 actively doing the books for a twelve (12) month period and continuing to assist the husband's partner by phone thereafter, whenever necessary, for an approximate six month period. Neither the wife nor her mother were paid for their labors in the husband's business. The contributions of the wife and her mother were corroborated by the testimony of John Cuminsky, the husband's former partner. According to the husband, the wife's contributions to his business were minimal, consisting of four to five days in the store over the course of a year; His recollection was that his mother-in-law did some bookkeeping only at the time of the partnership change for a period of approximately four to five months.
The husband is in good health. The wife's health is quite poor as she is afflicted with Crohn's disease which recently required two major surgeries. Her colon, most of her small bowel, her rectum, large intestine and anus have been removed. She now has a permanent ileostomy, which means that for the rest of her life her wastes will be discharged into a bag attached to an opening in her stomach. The bag needs to be emptied five to six times a day depending on what food she has consumed. It also must be changed every five days or sooner if it irritates her skin, usually due to a seal breakage.
In addition to the demanding ostomy maintenance required, the wife's medical condition severely impacts her life in a myriad of ways, both economic and emotional. Understandably, she is very self-conscious of her condition. If she is going out somewhere, she won't eat so that her condition won't be noticeable. The ostomy supplies range from $60 to $80 per month or more if leakage occurs. While she was hospitalized in September of 1994, Mrs. Bennett learned that her husband had allowed her health insurance to lapse. She is now unable to obtain health insurance coverage. At the time of trial, she was on Title XIX which she expected to expire soon. Her employment prospects are vastly affected as she requires frequent lengthy access to a lavatory and in her words, "an understanding boss" if she were to work full-time. Stress played a part in the flare-ups of the wife's Crohn's disease. She testified to two major flare-ups during her time with Mr. Bennett, the first occurring after the premature birth of their son who then spent two weeks in the neonatal intensive care unit, and the second occurring after her husband left her in February of 1993.
According to the wife's testimony, the parties' relationship CT Page 6199 began to deteriorate after Christopher's birth. The husband, by his actions, indicated little interest in being a father, finding Christopher to be an annoyance or an intrusion in their lives. When he began staying out late at night, the wife became suspicious and confided her suspicions to her mother who hired a private investigator to perform a surveillance of the husband's activities. Subsequent to the surveillance, she confronted her husband, asking him if he was spending the night with Jennifer Eddy, which he then admitted. She asked him to go to counseling but he refused saying he did not want to leave Ms. Eddy.
According to the husband's testimony, he moved in with Ms. Eddy sometime in March of 1993. According to Ms. Eddy, who testified at trial, Mr. Bennett has lived with her from approximately February 8 or 9 of 1993.
The plaintiff claims that the problems in the marriage began after the birth of his son when his wife did not return to work full-time creating financial difficulties. The weightier and more credible evidence leads to the conclusion that the plaintiff is primarily at fault for the dissolution of this marriage due to his immaturity in dealing with the demands of parenthood and his infidelity.
The husband sold his business in August of 1994. This business was started by the plaintiff prior to the marriage and the defendant made no monetary contribution thereto. The proceeds of the sale are currently held in escrow by Attorney Ward Mazzucco. Two accountants testified regarding the business and the tax consequences of the sale. Joseph P. Summa, the plaintiff's accountant, indicated that the business was started in 1985 with a capital stock purchase by each of the two partners of $500 and loans (by cash or equipment) of $19,500 each. Mr. Bennett was repaid $4,819.50 of his loan in 1987 and $13,696.50 in 1988. The $87,000 sales price for Mr. Bennett's share of the business (which included a boat which Mr. Bennett retains) did not include more than $500 of his original investment. As the basis for tax purposes is only $500, Mr. Summa's calculation of the capital gains tax due would be $28,000 assuming 28 percent federal and 4.5 percent state, which must be paid in one lump sum.
James L. Lathrop testified that the tax rates testified to by Mr. Summa are the maximum amounts and that the amount of the gain to be taxed is $80,000. The boat which was retained by Mr. CT Page 6200 Bennett, as part of the buy out, is valued by him at $7,000 on his financial affidavit. Mr. Cuminsky, his former partner, testified that $7,000 was the valuation at the time of the purchase of Mr. Bennett's interest in the business. Additional testimony regarding the boat's value at a range of $5,225 to $6,556 was provided by William Corbin, a friend of Mr. Bennett, who is employed by Sunland Marine and has experience in the valuation for purchase and sale of Bass boats. The court finds the boat value to be $7,000 not $14,000 as argued by the defendant.
The escrow funds from the sale of the business and the boat are the only major assets owned by either party as their previously jointly owned condominium was foreclosed upon during the pendency of this action. The court took judicial notice of the foreclosure file, Docket No. CV 94-0317928, Connecticut Housing Finance Authority v. Scott C. Bennett, Rhonda J. Bennett and Brookfield Hills Condominium Unit Owners Association. The equity in the condominium was insufficient to satisfy the debt.
Both parties are currently employed. Mr. Bennett works at Kimberly-Clark earning gross wages of approximately $471.70 per week. He has separately purchased health insurance coverage for himself and his son at a total cost of $159 per month. No evidence was presented as to the cost allocable to the minor child's insurance coverage. The wife is employed at the child care center at the F.C.I. in Danbury, earning approximately $6.50 per hour. She reflects weekly gross earnings of $133.25 on the financial affidavit filed with the court or 20.5 hours per week. When hired for the position, she expected a 30 hour work week. Her hours, however, are affected by holidays and the number of children attending on any given day. If attendance is low, staff members are sent home. Since the commencement of this employment, Mrs. Bennett has never worked a full 30 hour week.
The husband continues to reside with Ms. Eddy. After the foreclosure of the condominium, the wife moved into a home owned by a Mr. Emans. She pays him $100 per week rent and also purchases groceries for the home. Mr. Emans also rents to another tenant. Mrs. Bennett admits that she and Mr. Emans are more than landlord and tenant, essentially living as husband and wife, although they have not discussed marriage.
The husband's relationship with the minor child has improved now that Christopher is no longer an infant. Mr. Bennett's CT Page 6201 parents provide child care for their grandson while the wife is working. The husband sees his son frequently due to this arrangement. There appears to be little communication between the parties of any substance regarding the child or any other matters. Mrs. Bennett questioned whether the plaintiff is capable of discussing major issues indicating that if it's good, he probably could but if it's bad or difficult, his tendency is to walk away. The wife complains of the husband's unreliability specifically in terms of the time of visitation with Christopher. The husband has also been seeking employment out of this state, most recently in Florida. In view of the evidence of the parties' history, it is likely that the necessary agreements which must be reached to effectuate a successful order of joint custody would never become a reality in this case. The court finds that the statutory presumption of joint custody, being in the best interests of the child, cannot be sustained in this instance. See section 46b-56a(b).
In determining the proper orders in this case, the court must consider the factors set forth in sections 46b-56, 46b-81, 46b-82
and 46b-84 of the General Statutes and the Child Support Guidelines, together with the provisions of section 46b-62. With respect to alimony, support and a division of the property of the parties, the law to be considered has been state as following:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes, Sec. 46b-82; Thomas v. Thomas, 159 Conn. 477, 486, 271 A.2d 62 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' [Citation omitted.] Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisition of assets of each of the parties; [citation omitted]; no single criterion is preferred over all the others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations the financial circumstances, both actual and potential, are entitled to great weight.
Valante v. Valante, 180 Conn. 528, 530, 531 (1980); Watsonv. Watson, 221 Conn. 698, 710 (1992).
The court has considered all of the criteria of sections CT Page 620246b-56, 46b-81 and 46b-82 of the General Statutes together with the provisions of section 46b-62 and all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account"; Scherr v. Scherr, 183 Conn. 366,368 (1981); this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982). Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding; Leo v. Leo, 197 Conn. 1, 5 (1985); and that the court need not give equal weight to each factor. Kane v.Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. It has jurisdiction over the parties to this action.
2. The allegations have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The husband's income for the purpose of calculating child support is $369.48. This amount was calculated as his gross earnings of $471.70 less federal withholding of $56.19, social security of $36.09, and state income tax of $9.94. No amount is deducted for the child's portion of the health insurance premium as no evidence of same was presented to the court.
5. The wife's health severely impacts her earning capacity and correspondingly her financial needs and her ability to obtain health insurance.
6. The husband's educational background and earning capacity are superior to that of the wife.
7. The husband's credibility in much of the testimony he presented at trial was severely lacking.
The court enters the following orders:
1. A decree of dissolution of marriage shall enter on the ground of irretrievable breakdown of the marriage. CT Page 6203
2. The defendant is awarded sole custody of the minor child, Christopher, subject to reasonable visitation by the father.
3. The plaintiff shall pay to the defendant the sum of $93 per week as child support until Christopher reaches the age of eighteen (18). If Christopher is a full-time high school student, such payments shall be made until he completes the twelfth grade or attains the age of nineteen (19), whichever first occurs.
4. The plaintiff shall maintain the current health insurance coverage for the benefit of the minor child until he reaches the age of eighteen (18). The defendant shall have the benefit of the provisions of section 46b-84(d) of the General Statutes. Christopher's unreimbursed medical expenses shall be paid 75 percent by the plaintiff and 25 percent by the defendant. The husband shall reimburse the wife for his share of any unreimbursed medical expenses paid by the wife within fourteen (14) days of receiving written notification of same.
5. The plaintiff shall pay to the defendant during his lifetime the sum of $50 per week as alimony until her death or remarriage so long as the minor child primarily resides with her.
6. The escrow funds being held by Attorney Ward Mazzucco shall be divided as follows:
 A. The plaintiff shall provide detailed calculations of the amount of federal and state capital gains tax due on the proceeds of sale to the defendant within thirty (30) days.
 B. The defendant shall have two weeks thereafter to review such calculations.
 C. If the parties agree on the amounts of such taxes, they shall so indicate in writing to Attorney Mazzucco and direct him to make payment of same directly to the appropriate taxing authorities.
 D. The balance of the escrow funds shall be paid 75 percent to the defendant and 25 percent to the plaintiff.
 E. The court will retain jurisdiction over this provision in the event there are disputes between the parties which require resolution.
CT Page 6204
7. The husband shall retain all right, title and interest in the Bass boat.
8. Except as otherwise noted herein, the assets, as reported in the plaintiff's financial affidavit, shall be his free of any claim or demand by the defendant.
9. Except as otherwise noted herein, the assets as reported in the defendant's financial affidavit shall be hers free of any claim or demand by the plaintiff.
10. The parties shall each be responsible for one-half of any deficiency judgment which may accrue from the foreclosure of the previously jointly owned condominium. Each party shall indemnify and hold the other harmless from any liability for the other party's 50 percent deficiency responsibility.
11. Each party is responsible for his or her respective counsel fees;
Dennis, J.